## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ALLEN GALBREATH,                          )
                                          )
                    Plaintiff,            )
vs.                                       )        NO.  CIV-11-1336-HE
                                          )
THE CITY OF OKLAHOMA CITY and             )
KEVIN PARTON,                             )
                                          )
                    Defendants.           )

## ORDER

Plaintiff Allen Galbreath sued the City of Oklahoma City and Oklahoma City police officer Kevin Parton, alleging his arrest for disorderly conduct pursuant to Oklahoma City Ordinance 30-81 violated his constitutional rights.  Plaintiff claims he was arrested because "his expressions do not conform to traditional gender stereotypes or mainstream tastes." Amended Complaint, p. 1.  He contends the disorderly conduct ordinance is unconstitutional and asserts claims under 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act.

Plaintiff seeks damages, an injunction prohibiting the City from enforcing Ordinance 30-81 and declaratory relief.  He has filed a motion seeking partial summary judgment on his claims for equitable relief and both the City and defendant Parton have filed motions for summary judgment.

### Background

The facts, taken principally from plaintiff's deposition testimony, are essentially

undisputed.[1]  On June 7, 2010, plaintiff, a former ballet dancer, went to Goodholm Park in

Oklahoma City to perform his morning physical therapy exercises, which are based on ballet

moves.  He was carrying a red purse or bag that contained an air pistol[2] and was wearing

"[o]versized gray pants, a fitted gray T-shirt, and a red bandana" as a headband, in addition

to black high heeled shoes.[3]  Doc. #57, Exhibit 1, Plaintiff's depo., p. 49.  Plaintiff also was

carrying a cane, which he estimated as being at least three feet long and more than three

inches in diameter.

Due to a medical condition, it is painful for plaintiff to stand or walk.  Plaintiff

testified that he has difficulty walking and it could appear as though he were stumbling.  Doc.

#61, Exhibit 3, p. 79.  He was working out at the park to "get [his] body back together" so

he could resume his career as a female impersonator.  Doc. #61, Exhibit 3, p. 22.[4]  He was

"using the high-heel shoes as a form ... of physical therapy."  *Id.*

Once at the park Galbreath went to the bleachers, put his bag down and then walked

---

[1]*Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To the extent a fact dispute exists, it has been resolved in plaintiff's favor.  See Koch v. City of Del City,  660 F.3d 1228, 1238 (10th Cir. 2011) ("When applying this [Rule 56] standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.") (internal quotation marks omitted), cert. denied, ___ U.S. ___ (2012).*

[2]*Plaintiff described the bag as "a red diaper bag," which he testified he usually used to carry his air pistol, other personal items and high heels that he would change into at the park.  Doc. #60, Exhibit 7, p. 50.*

[3]*Plaintiff referred to the shoes as "character shoes."  Doc. #61, Exhibit 3, p. 49.*

[4]*Exhibit 3 to Doc. #61 was filed under seal.  See Doc. #65.*

to the tennis courts to pick up some trash.  He was talking on his cell phone, laughing loudly and singing.[5]  At some point he performed a choreographed dance move that involved spinning the cane in his right hand, then his left hand, then with both hands and then spinning it up and around, above and below his head.

Plaintiff was observed by an individual, Gayle Franklin, who was at the park with her five grandchildren.  Ms. Franklin stated she heard a man yelling and looked up and saw a person waving a big stick around, as if "he was having a sword fight with somebody."  Doc. #61, Exhibit 4, p. 7.  She said he looked and sounded drunk and was "acting like someone was attacking him and he was protecting himself with this big long stick.[6]  *Id.* at pp. 7, 52.  She could not understand what the person was saying, but testified she was scared by the way "he was swinging the stick and yelling and staggering."  Id. at p. 26.  She had the children hide in the slide and called 911.  She told the dispatcher that she was at the park with her five grandchildren and there was a man in high heels with a big stick and a purse, who was "drunk or . . ."  Doc. #57, Exhibit 2.

Officer Parton responded to the 911 call.  The dispatcher stated: "Check for a morals violation at 2701 North Robinson.  At the park there's supposed to be a single 87 black male."  Plaintiff's Exhibit 1.  The number 87 is a code used by the Oklahoma City Police Department to indicate that an intoxicated pedestrian has been reported.  Doc. #71, Exhibit

---

[5]*Plaintiff disputes that he was singing loudly that morning, although he testified that he was singing and that "I ... sing rather loud" and "I use the park as my studio, my rehearsal hall. So, yeah, I – I kind of let it go."  Doc. #61, Exhibit 3, p. 80.  His voice level does not matter here.*

[6]*Ms. Franklin testified that the "stick" was six feet long.  Doc. #61, Exhibit 4, p. 58,*

1.  The officer got to the park at 8:50 a.m., about five minutes after Galbreath had arrived. Plaintiff, at that time, was talking on his cell phone.[7]  Officer Parton  approached plaintiff and, when he was approximately an arm's length away, plaintiff raised his cane.[8]  The officer asked plaintiff what he was doing and he replied "[m]y  morning exercises" and started a ballet move in response to Parton's question.  Doc. #61, Exhibit 3, pp. 60, 62, 161; Doc. #67, p. 9 n.2.  Officer Parton then escorted plaintiff to the police car.  He searched plaintiff's bag[9] and found an air pistol that plaintiff told him he carried for protection because he was a homosexual, cross-dressing black male.  Officer Parton asked plaintiff to put his hands behind his back so he could be pat searched for weapons.  Plaintiff initially complied, but when he began to pull away and become verbal, Officer Parton handcuffed him.  The officer ran background checks on plaintiff, but did not find any arrest warrants or any sexual criminal history.  He arrested plaintiff for violating the City's disorderly conduct ordinance,

---

[7]*Although plaintiff admitted to laughing loudly while on the phone, there is no evidence in the record that Office Parton heard him laughing loudly.  Plaintiff's deposition testimony, the only evidence on this issue, is unclear as to when plaintiff was laughing.  Plaintiff did not depose Officer Parton and the defendant did not submit an affidavit in conjunction with his motion, although the City attached the officer's responses to plaintiff's interrogatories to its motion.  Doc. #57, Exhibit 5.*

[8]*Plaintiff did not deny that he raised the cane.  Rather, in response to defendant's Fact #9,(Doc. #61, pp. 5-6), plaintiff stated that he "admit[ted] to performing a deliberate and choreographed dance move using his walking cane, but he denie[d] any characterization that he was swinging his walking cane in a wild or unpredictable fashion, or in any manner that could be perceived as a threat."  Doc. #67, pp. 2-3, ¶9.*

[9]*The parties do not directly discuss, in the context of Officer Parton's motion, when plaintiff was arrested.  Although there is some discussion elsewhere that plaintiff's bag was searched prior to the arrest, as plaintiff hinges the unconstitutionality of the search of his bag on the validity of his arrest, the timing of the arrest is immaterial.  See plaintiff's response, Doc. #67, p. 12 & n.5.*

Municipal Code § 30-81.  In his report the officer stated in part:

> BASED ON MY OBSERVATION OF THE AR, HIS LACK OF A LEGITAMATE [sic] PURPOSE TO BE IN THE PARK AND THE INITIAL CALLS FROM CITIZENS WHO WERE ALARMED BY THE AR'S PRESENCE, IT APPEARED THAT THE AR WAS CREATING A SUSPICIOUS SITUATION WITH UNNECASSARY RISK TO THE PUBLIC, BEING THE CHILDREN AND WOMEN IN THE PARK. THE FACT THAT THE CITIZEN'S CALLED THE POLICE OUT OF CONCERN FOR THE AR'S BEHAVIOUR IS EVIDENCE OF THEIR PUBLIC ALARM. THE AR WAS PLACED UNDER ARREST FOR DISORDERLY CONDUCT.[10]

Doc. #60, Exhibit 1.

In responding to plaintiff's interrogatories, Officer Parton stated that plaintiff, in his presence, was loud and "was unsteady on his feet and never mentioned a physical problem walking, leading me to suspect he may have been intoxicated."  Doc. #57, Exhibit 5, p. 4. The officer also attested that "[a]ll the people were gathered at the playground equipment apparently alarmed by the Plaintiff's behavior instead of open play that would be expected at a park (other than the two individuals playing tennis, who were in a closed location)."  *Id.*

Plaintiff was charged with disorderly conduct and taken to jail. The City subsequently dismissed the charge.

Prior to his arrest on June 7, plaintiff had regularly visited the park and had, at times, worn women's high heeled shoes but had not been arrested.  Plaintiff testified that during the first six months of 2010, he went there two to three times a week and wore high heels while

---

[10]*Although Officer Parton referred in his report to multiple calls, there is only evidence of one call.*

performing physical therapy exercises for leg and hip pain.  He stated that June 7 was the first time he had ever walked to the park in high heels.  He said "I usually have my high heels in my bag; and when I get to the park, I'll put my high heels on and then take them off and put them back in the bag."  Doc. #60, Exhibit 7, p. 50.  He has also visited the park since his arrest, three to four times a week, but has not worn high heels from fear of being arrested.

Plaintiff asserts that, while he would wear women's heels to the park for therapeutic reasons, "doing so also permitted him to express himself and his association with the female gender and female identity."  Doc. #60, p. 4, ¶ 15.  However, he testified that he "was using the high-heel shoes as a form – form of physical therapy; and I didn't, in my mind, think of that as dressing like a woman."  Doc. #60, Exhibit 7, p. 22.

<u>Analysis</u>

<u>Plaintiff's Motion for Partial Summary Judgment</u>

In addition to damages, plaintiff seeks an injunction prohibiting the City from enforcing Ordinance 30-81 and declaratory relief.  He has filed a motion seeking partial summary judgment on his claims for declaratory relief, which the court concludes should be denied.

Plaintiff makes four requests for declaratory relief in his amended complaint.  He seeks declarations that (1) Oklahoma City Ordinance 30-81 is unconstitutionally void for vagueness on its face and as applied by Officer Parton, in violation of the due process clause; (2) Oklahoma City Ordinance 30-81 is unconstitutionally overbroad on its face and as applied by Officer Parton, in violation of his First Amendment right to freedom of

6

expression; (3) defendant Parton's conduct violated his Fourth Amendment right to be free from unreasonable searches and seizures; and (4) defendant Parton's conduct violated his First Amendment right to freedom of expression. He also seeks an injunction prohibiting the City from enforcing the ordinance. The City argues that plaintiff lacks standing to seek declaratory relief, that he was not cross dressing on the day he was arrested and that Ordinance 30-81 is constitutional.

"[S]tanding is a jurisdictional issue." PeTA v. Rasmussen, 298 F.3d 1198, 1202 (10th Cir.2002). Plaintiff has the burden of establishing he has standing to seek prospective declaratory or injunctive relief. Dias v. City & County of Denver, 567 F.3d 1169, 1176 (10th Cir. 2009). While "standing for retrospective relief may be based on past injuries, ... claims for prospective relief require a continuing injury." PeTA, 298 F.3d at 1202. "To have standing, [plaintiff] must show a real and immediate threat that [he] will be prosecuted under [Ordinance 30-81] in the future." Faustin v. City & County of Denver, 268 F.3d 942, 948 (10th Cir.2001). This he fails to do, as he has "not alleged a credible threat of future prosecution under the Ordinance" for cross dressing. Dias, 567 F.3d at 1176.

In a sworn affidavit, Assistant Municipal Counselor Laura Yates states that "it is not a violation of the City's ordinances for an individual to wear clothing that is typically associated with the opposite gender" and the Municipal Counselor's Office "cannot prosecute individuals for merely wearing clothing that is typically associated with the

opposite gender as such conduct would not violate any City ordinance."[11] Doc. #57, Exhibit 17.  In light of this assurance,[12] "it is not likely [plaintiff] will again be charged under [Ordinance 30-81]."[13]  Faustin, 268 F.3d at 948.  Plaintiff's requests for prospective declaratory and injunctive relief regarding the constitutionality of the ordinance will therefore be denied.[14]  See D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir. 2004) ("We have held that assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past."); PeTA, 298 F.3d at 1202-03.[15]

---

[11]The court recognizes that the affidavit was filed after plaintiff brought his lawsuit, but nonetheless concludes plaintiff lacks standing under Tenth Circuit precedent.  See Mink v. Suthers, 482 F.3d 1244, 1254-55 (10th Cir. 2007); D.L.S., 374 F.3d at 974-75.

[12]Plaintiff argues, without citation of authority, that the City attorney's statement that he will not be prosecuted for cross dressing is insufficient to defeat standing.  His argument is not persuasive in light of Tenth Circuit precedent to the contrary.  See Mink, 482 F.3d at 1255 ("Finally, although the 'No File' letter conceivably might not bind other district attorneys, we have held the possibility of future enforcement need not be reduced to zero to defeat standing.  It is not necessary for defendants [ ] to refute and eliminate all possible risk that the statute might be enforced to demonstrate a lack of a case or controversy.") (internal quotation marks omitted).

[13]The court assumes, for purposes of this motion only, that plaintiff was arrested for cross dressing.

[14]The court also concludes plaintiff's claim for prospective relief is moot.  See Mink, 482 F.3d at 1256-57.

[15]Plaintiff did not claim that he has "standing under the more lenient standing requirements applicable to cases raising facial challenges on First Amendment overbreadth grounds."  D.L.S., 374 F.3d at 975-96.  Such a claim would have failed, nonetheless, as plaintiff did not "show that the statute censors or chills third parties whose speech is more likely to be protected by the First Amendment than the plaintiff's own speech."  Id.

Plaintiff does, though, have "standing to sue for damages based on [his] prosecution . . . and to seek declaratory relief with respect to [his] prosecution." Faustin, 268 F.3d at 948. *See* Dias, 567 F.3d at 1176 ("[S]tanding for retrospective relief can be based on past injuries."). In other words, he can ask the court to determine whether past constitutional violations occurred. *See* Faustin, 268 F.3d at 948; F.E.R. v. Valdez, 58 F.3d 1530, 1533 (10th Cir. 1995) ("The Patients' claim for a declaratory judgment is similar to their claim for damages. In each, the Patients ask the court to determine whether a past constitutional violation occurred."). However, plaintiff has not demonstrated that he is entitled to summary judgment on his claims premised on his arrest. He merely has shown that he has standing to pursue them.

Plaintiff's motion for partial summary judgment will be denied**.** Plaintiff has not shown he is entitled to declaratory judgment on his claims alleging violations of First, Fourth, and Fourteenth amendment rights as a result of his arrest.[16] His claims for prospective declaratory and injunctive relief will be dismissed with prejudice for lack of standing.

Defendant Parton's Motion for Summary Judgment

Plaintiff seeks a declaration that defendant Parton violated his First and Fourth

---

[16]*The court "consider[s] declaratory relief retrospective to the extent that it is intertwined with a claim for monetary damages that requires [it] to declare whether a past constitutional violation occurred. In such a situation, however, declaratory relief is superfluous in light of the damages claim."* PeTA, *298 F.3d at 1202 n.2 (internal quotation marks omitted).*

Amendment rights and compensatory damages for those alleged violations.   Defendant

Parton has filed a motion for summary judgment on all plaintiff's claims against him, which

the court concludes should be granted.

Plaintiff claims Office Parton violated his Fourth Amendment rights when he arrested

him for disorderly conduct.  He contends the officer lacked probable cause to believe he was

violating Municipal Ordinance 30-81.  Plaintiff argues that Office Parton unconstitutionally

searched his purse because the search was not incident to a valid arrest.  Defendant Parton

claims he is entitled to qualified immunity on plaintiff's Fourth Amendment claims because

he had probable cause to arrest plaintiff for disorderly conduct and the search of plaintiff's

bag was proper as either a limited protective search for weapons or as a search incident to

arrest.  He contends he is entitled to qualified immunity on plaintiff's First Amendment

claim, as his actions "did not violate any recognized First Amendment right." Defendant's

motion, p. 3.

When a defendant moves for summary judgment on the basis of qualified immunity,

"'the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional

right and (2) the constitutional right was clearly established.'" Koch v. City of Del City, 660

F.3d 1228, 1238 (10th Cir. 2011) (quoting Martinez v. Beggs, 563 F.3d 1082, 1088 (10th

Cir.2009)), *cert. denied*, ___ U.S. ___ (2012). "'If, and only if, the plaintiff meets this

two-part  test does a defendant then bear the traditional burden of the movant for summary

judgment—showing that there are no genuine issues of material fact and that he or she is

entitled to judgment as a matter of law." *Id.* (quoting Clark v. Edmunds, 513 F.3d 1219,

1222 (10th Cir.2008)).

Fourth Amendment – False Arrest

In the Tenth Circuit "it is clearly established that an officer may not arrest an individual without a warrant unless there is probable cause." Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010). "'Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested.'" Koch, 660 F.3d at 1239 (quoting United States v. Alonso, 790 F.2d 1489, 1496 (10th Cir.1986)). The substantive standard "requir[es] more than a bare suspicion but not proof beyond a reasonable doubt or even a  preponderance." Kerns. v. Bader, 663 F.3d 1173, 1188 (10th Cir. 2011), *petition for cert. filed*, (U.S. May 29, 2012) (No. 11-10715). As this is an objective standard, "'[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive.'" Koch, 660 F.3d at 1239 (quoting United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir.2004)).

When considering an unlawful arrest "[i]n the qualified immunity/summary judgment context ... not only must the plaintiff demonstrate that the officer arrested [him] without probable cause (that is, that he violated a constitutional right), but also that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances (that is, that the right was clearly established in the specific situation)." Koch, 660 F.3d at 1241. "This inquiry 'must be undertaken in light of the specific context of the case, not as

a broad general proposition.'" <u>Mecham. v. Frazier</u>, 500 F.3d 1200, 1205-06 (10th Cir. 2007) (quoting <u>Cortez v. McCauley</u>, 478 F.3d 1108, 1114 (10th Cir. 2007)).  If a reasonable officer could have believed that probable cause existed to make a warrantless arrest, the arresting officer is entitled to qualified immunity.  <u>Koch</u>, 660 F.3d at 1241.  "Under this framework, sometimes referred to as 'arguable probable cause,' '[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.'" <u>Id.</u> (quoting <u>Cortez v. McCauley</u>, 478 F.3d 1108, 1120 & n. 15 (10th Cir.2007) (en banc)).

Officer Parton was dispatched to the park to investigate a possible "morals violation." He did not speak with the person who placed the call once he arrived at the park or anyone else, and was not told what Ms. Franklin said when she called.[17]  However, he either knew or could reasonably assume he was dispatched because of a 911 call.  He thus was aware, when he arrived at the park, that someone had been alarmed enough by plaintiff's presence to contact the police.[18]

When he got to the park Officer Parton observed an individual who matched the

---

[17]*The City asserts in its reply brief that the officer "had access to electronic communications supplied by the dispatcher via the Mobile Data Terminal in his patrol car," which would have informed him that "' cp is grandma at the park w/5 grand children .. there is a 87 bm w/large stick in high heels w/ a large stick..'" Doc.#71, p. 4.  However, there is no evidence in the record that the officer looked at the terminal prior to arresting plaintiff.*

[18]*Plaintiff relies on the officer's lack of investigation to support his claim that his Fourth Amendment rights were violated.  However, if the officer had spoken with Ms. Franklin, that would only have substantiated his conclusion that, with no obvious explanation for plaintiff's wobbly walk, loud laughter, singing and cane twirling, his presence at the park was causing public alarm.  Based on his own observations, the officer had sufficient information to conclude that probable cause existed to arrest plaintiff for violating the city ordinance.*

description he was given,[19] who was dressed unusually, was unsteady on his feet and was carrying, if not swinging or twirling, a sizeable cane or stick.  As Officer Parton drew near him, plaintiff raised his arm and cane.[20]  When asked what he was doing, plaintiff performed a ballet move and responded that he was doing his exercises.  While that movement may have been a ballet or choreographed dance move,[21] it was not unreasonable for the officer to fail to recognize it as such.  Ballet exercises may have been routine for plaintiff, but they are unusual in a park setting.  Moreover, plaintiff's abbreviated response to the officer, that he was exercising, did not explain why he was twirling a cane around in the middle of a park.  The officer also had to consider that he was confronting this behavior in a city park that included a playground.  He noted that people apparently were alarmed by plaintiff's behavior because, with the exception of the tennis players, everyone was gathered at the playground equipment. In the process of determining whether to arrest plaintiff, the officer had to consider where the behavior was occurring and who, in this case children, might encounter it.

Officer Parton arrested plaintiff for violating Oklahoma City's disorderly conduct ordinance, Municipal Code § 30-81, which provides in part:

---

[19]*The plaintiff does not dispute that he was the only person in the park who matched the description the dispatcher gave Officer Parton.*

[20]*The court does not find the failure to "detail in the narrative any conduct that caused public alarm" to be proof that such conduct did not occur.  Plaintiff's response, Doc. #67, p. 14. Plaintiff has admitted to the conduct on which the court relies in determining the existence of probable cause.*

[21]*See plaintiff's response, Doc. #67, p. 2, ¶9.*

13

A person is guilty of disorderly conduct, a Class "a" offense, when such person:

(b) causes public alarm without justification.

The parties have not cited any Oklahoma cases discussing, much less resolving, any question as to the scope of the city ordinance and none were found by the court. As defendant Parton acknowledges, the disorderly conduct cases he relies on are factually distinct. *E.g.*, Aragon v. City of Albuquerque, 423 Fed.Appx. 790 (10th Cir. 2011) (unpublished). However, none of the cases plaintiff cites persuade the court that probable cause was lacking in this case. *E.g.*, Stearns v. Clarkson, 615 F.3d 1278 (10th Cir. 2010); Fogarty v. Gallegos, 523 F.3d 1147 (10th Cir. 2008).

The question is whether, under "the totality of the circumstances," Koch, 660 F.3d 1239, the officer had probable cause to believe the statutory elements of public alarm and lack of justification were present. The court concludes "the facts and circumstances within [Officer Parton's] knowledge and of which [he] had reasonably trustworthy information [were] sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense ... [was] being committed by the person ... arrested. *Id.* (internal quotation marks omitted). *See* Kerns, 663 F.3d at 1188 (the relevant question, when determining whether probable cause existed, is "whether a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion.") (internal quotation marks and citation omitted).

Even if probable cause was assumed not to exist for Officer Parton to arrest plaintiff for disorderly conduct, the court would nonetheless conclude that it would not have been

"'clear to a reasonable officer that his conduct was unlawful' under the circumstances presented." Fogarty, 523 F.3d at 1155 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). *See* Reher v. Vivo, 656 F.3d 772, 776 (7th Cir. 2011) ("[G]iven the lack of case law on point, a reasonable officer would not necessarily have known whether Reher's alleged videotaping of the children was suspicious enough to cross the line between 'mere videotaping' and videotaping plus whatever else is necessary to give rise to disorderly conduct in Illinois."); *see generally* Fogarty, 523 F.3d at 1161 (Because it cannot find qualified immunity with each new fact pattern, the Tenth Circuit "uses a sliding scale to determine when law is clearly established.  Under this approach, [t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.") (internal citation and quotation marks omitted).  This is not a situation where "'existing precedent [has] placed the statutory or constitutional question *beyond debate*.'"  Kerns, 663 F.3d at 1183 (quoting Ashcroft  v. al–Kidd, ___ U.S. ___. ___(2011).  "And the burden of identifying clearly established law rests with the plaintiff." Hernandez v. Story, 459 Fed.Appx. 697, 700 (10th Cir. 2012) (unpublished) (citing Herring v. Keenan, 218 F.3d 1171, 1175-76 (10th Cir. 2000)).

With the benefit of hindsight, it is of course possible that the encounter with plaintiff might have been handled in some different or better fashion. Nonetheless, the court concludes plaintiff has not carried "the heavy burden of showing both that (1) the defendant-officer in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that

15

'every reasonable official would have understood that what he [was] doing' violated the law." Kerns, 663 F.3d at 1180 (quoting Ashcroft, ___ U.S. at ___). Defendant Parton is entitled to summary judgment on plaintiff's Fourth Amendment arrest claim.

## Fourth Amendment – Search

Plaintiff allotted little of his brief to his Fourth Amendment challenge to the search of his bag, other than to state that "the validity of a search incident to arrest is predicated on the validity of the arrest." Plaintiff's response, Doc. #67, p. 12. As the court has concluded defendant Parton is entitled to qualified immunity with respect to plaintiff's arrest, he also is immune from damages for the search incident to the arrest. Summary judgment will be entered in the officer's favor on plaintiff's Fourth Amendment search claim.

## First Amendment

Plaintiff did not respond to defendant's motion insofar as it addressed his First Amendment claim. He therefore confessed the motion as to that claim. See LCvR. 7.1(g).[22]

## Defendant City of Oklahoma City's Motion for Summary Judgment

The court has concluded plaintiff's claims seeking prospective declaratory and injunctive relief should be dismissed for lack of standing and that summary judgment should be entered in defendant Parton's favor on plaintiff's First and Fourth Amendment claims. Because the court has found in favor of Officer Parton on plaintiff's claims that he was

---

[22]*Plaintiff testified that he "was using the high-heel shoes as a form – form of physical therapy; and I didn't, in my mind, think of that as dressing like a woman," Doc. #60, Exhibit 7, p. 22. In the absence of evidence he was communicating something by his dress, there is no reason to assume plaintiff's conduct fell within the protective scope of the First Amendment.*

arrested without probable cause and in violation of his First Amendment rights and that his purse was illegally searched, plaintiff cannot recover from the City for those alleged constitutional violations.[23]  *See* Trigalet v. City of Tulsa, 239 F.3d 1150, 1155 (10th Cir. 2001) (municipality cannot "be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights.").  The City has moved for summary judgment on the remaining claims: plaintiff's § 1983 claims against the City for declaratory relief and damages based on the vagueness and overbreadth of Oklahoma City Ordinance 30-81 and his state law claim asserted under the Governmental Tort Claims Act based on Officer Parton's alleged negligence.

Section 1983 claims

Plaintiff contends Oklahoma City Ordinance 30-81 is void for vagueness on its face in violati4on of the Fourteenth Amendment.  In his response he abandons his challenge to the ordinance on the ground it is overbroad.  Doc. #68, p. 6. Plaintiff argues that the ordinance contains no scienter element and fails to provide adequate notice to "men of ordinary intelligence" of the conduct that is proscribed.  *Id. at* p. 8.  He also argues that the ordinance lacks objective standards and consequently vests too much discretion in the officials charged with enforcing it.

Plaintiff does not specify whether he is claiming that the ordinance is

---

[23]*The court recognizes that a finding of qualified immunity in favor of Officer Parton based on lack of clearly established law does not shelter the City itself from liability.  However, the conclusion that the officer had probable cause for plaintiff's arrest does support that result.  The court also notes the absence of any other evidence demonstrating a basis for municipal liability as to plaintiff's First or Fourth Amendment claims.*

unconstitutionally vague on its face or as applied.  However, "facial challenges are appropriate in two circumstances: (1) when a statute threatens to chill constitutionally protected conduct (particularly conduct protected by the First Amendment);or (2) when a plaintiff seeks pre-enforcement review of a statute because it is incapable of valid application." Dias v. City & County of Denver, 567 F.3d 1169, 1179 (10th Cir. 2009). Plaintiff's claim does not fall in either category.  By failing to press his First Amendment claim in response to Defendant Parton's motion, plaintiff cannot now assert the ordinance threatens to chill conduct protected by the First Amendment.[24]  As he contends he was wrongfully arrested under the statute he also is not seeking pre-enforcement review. The court will therefore treat his claim as an "as applied" challenge to the ordinance.

"'[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" United States  v. Hunter, 663 F.3d 1136, 1141  (10th Cir. 2011) (quoting United States v. Graham, 305 F.3d 1094, 1105 (10th Cir. 2002)). When considering a vagueness challenge to a penal statute, a court must "begin with 'the presumption that the statute comports with the requirements of federal due process and must be upheld unless satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution.'" Id. (quoting United States v. Welch, 327 F.3d 1081, 1094 (10th Cir.2003)).

---

[24]See supra note 24.

To be upheld, "[a]ll that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices...." *Id.* (internal quotation marks omitted). [25]

Municipal Code § 30-81 provides in part:

A person is guilty of disorderly conduct, a Class "a" offense, when such person:
(b) causes public alarm without justification.

The statue has two requirements: the person must engage in conduct that causes apprehension by the public and there must not be an apparent explanation or justification for the behavior.

The court concludes the statute defines the offense with sufficient definiteness that it does not violate plaintiff's due process rights.[26] Ordinary people can understand what conduct is prohibited and the offense sets forth minimal guidelines to govern law enforcement and prevent arbitrary enforcement.[27] *See* Colten v. Kentucky, 407 U.S. 104, 110-111 (1972).

As applied to plaintiff's arrest, the ordinance cannot be said to be unconstitutionally

---

[25] *When considering whether a challenged statute provides fair notice, courts often "consider[ ] factors such as the enactment's purpose, the harm it attempts to prevent, whether there is a scienter requirement, and the interpretations of individuals charged with enforcement."* Jordan v. Pugh, *425 F.3d 820, 825 (10th Cir. 2005). The court does not find those factors to be particularly helpful here.*

[26] *The issue is presented in a different posture than usual, as the charge against plaintiff was dropped. See e.g.,* United States v. Walker, *137 F.3d 1217, 1219 (10th Cir. 1998) ("Where, as here, a vagueness challenge does not implicate First Amendment values, the challenge cannot be aimed at the statute on its face but must be limited to the application of the statute to the particular conduct charged. Accordingly, the challenge must be based only on the facts as they emerge at trial.") (internal citation and quotation marks omitted).*

[27] *Plaintiff gives one example of protected behavior that might be subject to prosecution under the statute – funeral protests. However, the City explains why funeral protestors could not be arrested for violating Municipal Ordinance 30-81.*

vague.  *See* Hunter, 663 F.3d at 1141-42; United States v. Walker, 137 F.3d 1217, 1219 (10th Cir. 1998).  For no apparent reason, plaintiff was behaving in a public place in an alarming or disconcerting  manner.  When given the opportunity to explain, plaintiff replied "my morning exercises" and proceeded immediately with conduct which a reasonable person might have viewed as threatening, or at least as something other than an ordinary "morning exercise."  While plaintiff's arrest, under the circumstances as we now know them to be, was perhaps unfortunate, it did not violate his due process rights.

Negligence claim under the Governmental Tort Claims Act

Plaintiff does not address the City's motion insofar as it seeks summary judgment on his negligence claim.  He has therefore confessed it.  LCvR. 7.1(g).  Further, the court has concluded Officer Parton had probable cause to arrest plaintiff and that, based on that conclusion, the search of plaintiff's bag was valid.  Therefore, plaintiff's negligence claim, based on the same conduct, would have failed if he had pursued it.

Conclusion

Plaintiff has not shown he is entitled to declaratory judgment on his claims alleging violations of First, Fourth, and Fourteenth amendment rights as a result of his arrest.  Accordingly, plaintiff's motion for partial summary judgment [Doc. #60] is **DENIED** and his claims for prospective declaratory and injunctive relief are dismissed with prejudice for lack of standing.

With respect to defendant Parton's motion, the court concludes the officer had probable cause to arrest plaintiff and would be entitled in any event to qualified immunity

as to plaintiff's Fourth Amendment arrest claim, and that the search of plaintiff's bag was proper as a search incident to arrest.  It also concludes plaintiff confessed his First Amendment claim.  Accordingly, defendant Parton's  motion for summary judgment [Doc. #61] is **GRANTED**.

The court further concludes that Oklahoma City Ordinance 30-81 is not unconstitutionally vague as applied, that the absence of an underlying constitutional violation precludes plaintiff's claims against the City based on Officer Parton's conduct and that plaintiff confessed his negligence claim asserted against the City  under the Governmental Tort Claims Act. Accordingly, the court **GRANTS** the City's motion for summary judgment [Doc. #57].

**IT IS SO ORDERED**.

Dated this 24th day of October, 2012.

JOE HEATON
UNITED STATES DISTRICT JUDGE